No. 25,923.

Eva L. Dent, *Appellant*, v. The Board of County Commissioners of the County of Jefferson, *Appellee.*

SYLLABUS BY THE COURT.

1. Negligence—*Instructions.* The failure, upon request, to give an instruction upon imputed negligence is held to have been material error.

2. Bridges—*Instructions—Guard Rails.* Instructions concerning the precautions required in the maintenance of a bridge are held to have been erroneous because of the omission to state clearly that the statute expressly requires guard rails and that in the situation presented other rails than those on the sides of the bridge might be found to have been necessary.

3. Same—*Guard Rails—Purpose.* The purpose of the statutory requirement that all bridges shall have guard rails along the sides is not alone to prevent a vehicle from running off, by interposing a barrier sufficient to stop or turn it, but also to help the driver to see the position of the bridge and direct his course accordingly.

4. Negligence—*Instructions.* An instruction in a negligence case that there can be no recovery if the injury was purely the result of an accident gives little or no aid to the jury if a definition is given of "accident," and without such definition is objectionable as likely to mislead.

5. New Trial—*Grounds.* Various objections to trial rulings are passed upon.

Appeal from Jefferson district court; Martin A. Bender, judge. Opinion filed May 9, 1925. Reversed.

*A. C. Wilson,* of Eureka, *Ivah C. Raines,* and *Oscar Raines,* both of Topeka, for the appellant.

*Lloyde Morris,* county attorney, *W. O. Worswick,* and *H. T. Phinney,* both of Oskaloosa, for the appellee.

The opinion of the court was delivered by

Mason, J.: Eva L. Dent, while riding with her husband in a car driven by him, accompanied by their baby and three other children, was injured by the car missing a bridge completely, or striking only the corner, and running into the ravine which it crossed. She brought this action against the county, alleging the injury to be the result of its negligence. Judgment was rendered in favor of the defendant and the plaintiff appeals.

1. Several instructions were asked by the plaintiff to the effect that unless she had control of the driving of the car she would not be prevented from recovery by the fact (if it existed) that the injury was contributed to by her husband's negligence. The only

instruction given which had relation to the conduct of the driver read as follows:

"Where one person is riding with another for the mutual pleasure or convenience of both, and such person discovers that the driver is running his automobile recklessly, or in a manner that would indicate injury and damage, it becomes his or her duty, if he or she has the opportunity, to insist that the driver shall desist or stop the automobile and allow him or her to alight, or to take some suitable steps for his or her own protection, and if, on the other hand, under such circumstances, such a person sits by without protest and permits himself or herself to be driven on to his or her injury, this will be such negligence as will bar a recovery by either party."

This defined the affirmative duty of the plaintiff, and informed the jury that she was herself negligent if she discovered reckless or dangerous driving on the part of her husband and took no steps for her own protection, but did not tell them that negligence on his part contributing to the injury was not itself a bar to her recovery. The matter of imputed negligence having specifically been called to the attention of the court, we regard it as material error not to have covered it in the charge. The instruction quoted is itself objected to, but is a correct statement of a general rule, and as there was some evidence of fast driving there was occasion for giving it.

2. The petition set out as grounds of negligence the failure to maintain guard rails and the fact that the bridge was located a considerable distance south of the middle of the road. It also alleged that in the darkness (it was about 6:30 o'clock p. m. of October 23) those in the car could not see the abrupt turn in the road, the bank of the ravine, or the bridge. The driver testified that an approaching car with unusually bright lights began to blind him just as he came to the bridge and he failed to see the track in front of him. The court gave these instructions, which are complained of, with respect to the absence of rails:

"The statutes of Kansas further provide that all bridges constructed upon highways, such as the one in question, shall have a clear roadway of not less than sixteen feet, when constructed under provisions of the acts of legislature of 1917 with reference thereto, and that it is the further duty of the county board upon all such bridges to place and maintain at all times good, solid, substantial guard rails, not less than three feet high, on each side of all bridges, culverts and trestle work."

"The law does not impose any duty upon the board of county commissioners to erect guard rails at or near a bridge unless an approach or embankment is made to said bridge, so in this case there is no duty devolving upon the defendant to erect a guard rail or banister along the bank of the ditch in

question on either side of the bridge in controversy unless you find that the condition as it existed there at the side of said bridge was generally a dangerous place. In other words, it is the duty of the county board to keep the roads and bridges of the county in a reasonably safe condition for public travel."

The statute concerning guard rails reads:

"That it shall be the duty of the county board on all county bridges and culverts, and the township board on all township bridges and culverts, to place and maintain at all times good, solid, substantial guard rails, not less than three (3) feet high on each side of all bridges, culverts, and trestlework." (R. S. 68-1110.)

In the section of the statute preceding this a requirement with respect to the width is made to apply only to bridges constructed under the act of March 8, 1917, but no such restriction is made in the section relating to guard rails. The first instruction of the two just quoted seems to leave in doubt whether the statute making guard rails obligatory applied to the bridge here in question; and the second is perhaps open to a construction negativing any express statutory duty in that regard. The requirement of the statute as shown by the foregoing quotation is absolute and mandatory and the jury should have been so instructed. If the second of the two instructions is interpreted as referring only to guard rails near but not on the bridge, it is open to the objection that the jury might understand they were not at liberty to find from the particular facts of the case that the exercise of ordinary care required some sort of rail leading to the bridge.

3. The defendant urges, however, that inasmuch as the car missed the bridge altogether, the existence of guard rails on the sides of the bridge could not have prevented the injury, and therefore no recovery could have been warranted by reason of their absence. The purpose of the guard rail, in our judgment, is not alone to prevent a vehicle from running off the bridge by interposing a barrier sufficient to stop or turn it, but also to help the driver to see the position of the bridge and direct his course accordingly. The absence of side rails may therefore have caused the injury.

Complaint is also made of an instruction based upon the theory that the absence of the guard rails could not be the legal cause of the injury if missing the bridge was due to the driver's inability to see it. Upon the ground already indicated, this must be held erroneous.

4. Another instruction to which objection is made reads: "If

you find from a preponderance of the evidence that the injuries and damages complained of, if any were sustained, was purely the result of an accident, then your verdict must be for the defendant." The word "accident" is subject to different meanings. Even if it had been defined as a happening not caused by negligence, the instruction could hardly have been of practical aid to the jury; and without such a definition there was some likelihood they would regard it as meaning an occurrence not intended. The instruction was inadvisable, whether or not it was sufficient in itself to require a reversal.

5. One ground upon which a new trial was asked was that an attorney for the defendant in addressing the jury said that they could not afford to set a precedent by allowing the plaintiff damages, adding: "To allow damages would mean that the taxpayers of this county would have to go down in their pockets to pay it. If you allow damages to one, you would be under obligation to allow damages to all who chose to bring a suit against the county in like cases, and you would bankrupt the county." These are obviously matters which should not be presented to or considered by the jury.

A witness, over objection, was permitted to testify that she had heard the plaintiff say she had told her husband (presumably in the course of the trip which ended in the ravine) that if he did not quit driving so fast and recklessly he would kill all of them. The evidence was competent as an admission. Testimony that the plaintiff's husband made certain statements appears to have been technically objectionable because a foundation for using them by way of impeachment had not been laid. Complaint is made that no definition of proximate cause was given in the instructions. The need for it is not so obvious as to make the omission error in the absence of a request. Material error being found, there is no occasion to consider the motion for a new trial on the ground of newly discovered evidence.

The judgment is reversed and a new trial ordered.