Myers, J.
 

 It is the contention of defendant that the trial court committed error in denying defendant’s motion to direct a verdict. Defendant contends, first, that the guard rails required on the approach to the bridge were intended to serve solely as a barrier and not as a warning, and, second, that the absence of guard rails in no way proximately caused or contributed to the accident and injuries of plaintiff.
 

 The instant case concerns three sections of the General Code relating to guard rails, which read as follows :
 

 Section 7563. “The board of county commissioners shall erect or cause to be erected and maintained where not already done, one or more guard rails on each end of a county bridge, viaduct or culvert more than five
 
 *148
 
 feet high. They shall also erect or cause to be erected, where not already done one or more guard rails on each side of every approach to a county bridge, viaduct or culvert if the approach or embankment is more than six feet high. They shall also protect, by suitable guard rails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway, other than state highways, or are adjacent thereto, in an unprotected condition, but in such cities and villages as by law receive part of the bridge fund levied therein, such guard rails shall be erected by the municipality, and on state highways such guard rails shall be erected and maintained by the department of state highways.”
 

 Section 7564. “It shall be a sufficient compliance with the provisions of the next preceding section, if the county commissioners shall cause to be erected and maintained, a good stock-proof hedge fence where a guard rail is required. Such guard rails or hedge fence shall be erected in a substantial manner, having sufficient strength to serve a protection to life and property, the expense thereof to be paid out of the county bridge fund.”
 

 Section 7565. “Failure to comply with the provisions of the next two preceding sections shall render the county liable for all accidents or damages as a result of such failure.”
 

 These statutes were enacted for the purpose of guarding the traveling public in its use of highways and bridges. One definition of the word “guard” as given by Webster’s Dictionary is: “To protect from danger; to defend; shield.” According to Crabb’s English Synonymes, ‘ ‘ Guard comes from Anglo-Saxon
 
 weardian,
 
 to watch, the
 
 gu
 
 being due to French influence. *
 
 * *
 
 To guard in its largest sense, comprehends both
 
 watching
 
 and
 
 defending,
 
 that is, both preventing the attack and the resisting it when it is
 
 *149
 
 made.” When Section 7563 was enacted in its original form in 1889 the title to the act was, “For the better protection of life and property by requiring county commissioners to erect guard rails.”
 

 These three sections were not intended merely for building a proper approach to a bridge. That purpose was provided for in Section 7559, General Code, as follows: “The county commissioners shall cause to be constructed without unnecessary delay, good and sufficient approaches or ways to bridges which are erected by them.” We may, therefore, say that guard rails, as provided for by statute, were intended to be something additional, something designed to guard and defend against peril and danger in approaching a bridge, especially in the night season.
 

 It is contended by counsel that in serving as “a protection to life and property” under the statute, the guard rails were not intended to be a warning. It is contended that since Section 7564 reads, “having sufficient strength to serve a protection,” “it is solely the strength of the guard that counts.” In making this contention defendant stresses the beginning of Section 7564 reading, “It shall be a
 
 sufficient compliance,”
 
 and maintains that by virtue of these words of the statute it was in no wise intended that the guard rails should serve as a warning but only as a barrier of sufficient strength to keep vehicles, etc., from going over an embankment.
 

 However, when these statutes were first enacted in 1889, Section 7564 (then Section 8035-292, Smith and Benedict, Revised Statutes [1890], Volumé 2, and later Section 4940-2 of Giauque, Revised Statutes [1896], Volume 1) did not contain the language “It shall be a sufficient compliance,” nor was there any mention of a “hedge fence.” When first enacted that section merely read, “Said guard rails shall be erected in a substantial manner, having sufficient strength to serve as a protection to life and property.” The words
 
 *150
 
 “sufficient compliance” came into the statute in the same sentence with “hedge fence” when the act was amended in 1892. The amendment, therefore, meant that it would be a “sufficient compliance” if a good stock-proof hedge fence
 
 w.eve
 
 erected and maintained instead of guard rails. The original act was also amended by inserting “or hedge fence” after the words “such guard rails” as if to intend that if a hedge fence is erected instead of a guard rail, it too must be of “sufficient strength to serve a protection to life and property.” It would seem, therefore, that “sufficient compliance” relates solely to the substitution of a hedge fence for guard rails, provided also that it be of the required strength.
 

 It is further claimed that inasmuch as “the statute says nothing about the guard rails being
 
 a warning”
 
 that “the purpose, therefore, is to
 
 protect
 
 and not to warn.” Since the word “protection” was used in the title of the original act and since Section 7563 contains the phrase, “they shall also protect,” it may be helpful to ascertain the meaning of this term. Webster’s Dictionary defines the word “protect” as follows: “To cover or shield from that which would injure, destroy or detrimentally affect.
 
 *
 
 *
 
 * to
 
 defend; to guard.” Quoting again from Crabb’s English Synonymes: “A person may be
 
 defended
 
 in any particular case of actual danger or difficulty; he is
 
 protected
 
 from what may happen as well as what does happen.” In the light of such definitions there can be no doubt as to the use of the words “protect” and “protection” as used in these statutes. These guard rails were designed to
 
 protect
 
 the traveling public not only from what
 
 mag happen
 
 but also from injury in event that something
 
 does happen.
 
 They were intended to serve both as a warning and a barrier.
 

 It is urged that the case of
 
 Bd. of County Commrs. of Franklin County
 
 v.
 
 Darst,
 
 96 Ohio St., 163, 117 N. E., 166, should govern the disposition of the instant
 
 *151
 
 case. That case is distinguishable from the issues we have here. The issue there was whether the statute required guard rails at fixed points of danger next to an approach even though the embankment at such point of danger might not be six feet high. That issue is not here presented.
 

 In
 
 Dent
 
 v.
 
 Jefferson Co. Commissioners,
 
 118 Kan., 519, 235 P., 873, in construing a similar statute, the court ruled that “The purpose of the statutory requirement that all bridges shall have guard rails along the sides is not alone to prevent a vehicle from running off, by interposing a barrier sufficient to stop or turn it, but also to help the driver to see the position of the bridge and direct his course accordingly.” See also
 
 Watkins
 
 v.
 
 City of Catlettsburg,
 
 243 Ky., 197, 47 S. W. (2d), 1032;
 
 Vidal
 
 v.
 
 Errol,
 
 86 N. H., 1, 162 A., 232; and
 
 Hall
 
 v.
 
 Wentworth’s Location,
 
 84 N. H., 236, 149 A., 81.
 

 We .consider next the claim that the absence of the guard rails was not a proximate cause of the accident and j.n no way contributed to the injuries of the plaintiff. It is claimed that the curve in the road, rather than the absence of guard rails, was the proximate cause of the accident. Much also is made of the fact that the automobile hit the bridge instead of going over the embankment. On the other hand, it is' argued by counsel for plaintiff that if the gnard rails had been on the side of the road for the required distance of more than 200 feet, thus outlining the highway leading to the bridge, the accident in all probability would not have happened. The driver would have been put on guard by the rails at the side of the roadway warning, of possible danger ahead. “Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury.”
 
 Hamden Lodge No. 517,
 
 v.
 
 Ohio Fuel Gas Go.,
 
 127 Ohio St., 469, 189 N. E., 246. The proximate cause of the accident was an issue to be determined from all the material facts' including the negli
 
 *152
 
 gence of the defendant in failing to comply with the statutes.
 

 The trial court instructed the jury that “the defendant would not be liable to plaintiff unless such failure on their part to so maintain said guard rails was a proximate cause of the injury.” The court also told the jury: “If, however, you determine and find that the negligence, if any, of the said Chester Slyder [driver of the car] was the sole proximate cause of the accident, then plaintiff cannot recover.”
 

 Since the issues were for the jury, the trial court was right in refusing to direct a verdict for the defendant. The judgment of the Court of Appeals will be reversed and the judgment of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Day and Williams, JJ., concur.
 

 Matthias, Zimmerman and Gorman, JJ., dissent.