MILKOVICH, APPELLANT, *v.*
THE LORAIN JOURNAL COMPANY ET AL., APPELLEES.
[Cite as Milkovich v. Lorain Journal Co. (1979),
65 Ohio App. 2d 143.]

(No. 6-287—Decided December 3, 1979.)

*Mr. Nathan Simon* and *Mr. Michael J. Occhionero,* for appellant.

*Wickens, Herzer & Panza Co., L.P.A., Mr. William G. Wickens* and *Mr. David L. Herzer,* for appellees.

HOFSTETTER, J. The matter on appeal came on for trial before a jury. After the plaintiff-appellant rested his case, the

defendants jointly moved the court for a directed verdict in their favor on the grounds that there was no justiciable issue for the jury and that reasonable minds could come but to one conclusion, to wit, that the proof failed to show by clear and convincing proof that the article which is the subject of this action was published with knowledge of its falsity or with reckless disregard as to its truth.

The trial court granted the motion in favor of the defendants, as follows:

"The Court finds that reasonable minds can come to but one conclusion, to-wit: that the evidence (construed most strongly in favor of the Plaintiff) fails to establish by clear and convincing proof that the article which was the subject of this action was published with knowledge of its falsity or in reckless disregard of the truth, and that there is no justiciable issue for the jury. Exceptions to the Plaintiff."

It is from this judgment, granting a directed verdict for the defendants, that plaintiff has appealed.

As background, the complaint in the court below was an action in libel filed by the plaintiff-appellant, Michael Milkovich, against the defendants-appellees, The Lorain Journal Publishing Company, owner and publisher of the Willoughby News-Herald, and Mr. Theodore Diadiun, as the result of the publication of a certain article on January 8, 1975. The article in question was stipulated at trial and admitted into evidence.

The events which led to the eventual publication of this alleged libelous article began on the evening of February 9, 1974, at a routine high school wrestling match between Mentor High School and Maple Heights High School. The latter team was coached by the now-retired Michael Milkovich, appellant herein. It appears that, during and shortly after a wrestling match between Bob Girardi of Maple Heights and Paul Pochatilla of Mentor High School, an alleged melee broke out among the fans and spectators in the crowd, and among the wrestling participants themselves. One of the defendants, Ted Diadiun, a sportswriter for The News-Herald, wrote a series of articles following the occurrence.

Following the altercation, a series of hearings were conducted by the Ohio High School Athletic Association (OHSAA) in Columbus, Ohio, following which the Maple Heights team

was totally suspended from state competition, and the appellant, Michael Milkovich, was censured.

It was at this time that a group of parents and wrestlers filed suit in the Court of Common Pleas of Franklin County in an action styled as *Barrett* v. *Ohio High School Athletic Association.* It was held by that court that the OHSAA failed to safeguard certain due process rights in suspending the team from state competition, thereby denying the team members of important property rights without due process of law.

Immediately after the announcement of the decision of Judge Martin of the Court of Common Pleas of Franklin County reinstating the Maple Heights team to state competition, the defendants published the alleged libelous article with the headline "Maple beat the law with the 'big lie.' "

Factually, therefore, it should be noted that, following the alleged melee between the Maple Heights and Mentor wrestling crowds, and as a result of hearings, the OHSAA suspended the Maple Heights team from state competition. Defendant Diadiun attended both the wrestling meet between the two teams as well as the OHSAA hearing. The subsequent action against the OHSAA in Franklin County was brought to determine whether certain due process rights were accorded the Maple Heights team before it was suspended from state competition. Defendant Diadiun did not attend the trial. The Franklin County trial was held on November 8, 1974, and the decision was announced on January 7, 1975, reversing the administrative action (of suspension). The reversal was on procedural grounds.

Pertinent to further discussion of publication on January 8, 1975, of the article which was headlined "Maple beat the law with the 'big lie' " are the following statements made during the cross-examination of Diadiun:

"Q. Now, when did you first become aware of the fact that this was a due process hearing and not a fault-finding hearing, if ever you became aware of it?

"A. I thought that the fault-finding would be included in the trial, yes. I knew that due process was one of the issues. I also thought that one of the issues were [*sic*] whether or not— who was at fault.

"* * *

"Q. Isn't it a fact, Mr. Diadiun, that you never read any

transcript of what occurred at that trial until after you published the article?

"A. Yes.

"* * *

"Q. Didn't you think it was necessary for you to read that decision [of Judge Paul Martin of the Court of Common Pleas of Franklin County] before you published such an article?

"A. Like I said, I knew the background of the whole case. I knew what Dr. Meyer told me went on at that trial. I didn't feel that I needed—

"* * *

"Q. The fact of the matter is, you never took the trouble to find that decision and read it, did you?

"* * *

"A. I didn't find the decision, no.

"Q. You didn't find it necessary to read it?

"A. No."

With the above as a fair predicate of the facts pertinent to our discussion of the directed verdict, we list appellant's ten assignments of error as follows:

"1. The Court erred in granting the motion of defendant-appellee for directed verdict at the close of testimony of the plaintiff.

"2. The Court erred in its ruling that plaintiff failed to meet the burden of proof by clear and convincing evidence at the close of testimony of the plaintiff, and that it was a necessary element for purposes of ruling upon a Motion For Directed Verdict.

"3. The Court erred in its ruling that plaintiff was severely lacking in any evidence to prove defendants published the Article with 'knowledge of its falsity.'

"4. The Court erred in its ruling by applying the incorrect law of Libel i.e. the Actual Malice test by omitting the proposition of law that the publisher acted with *total disregard for truth or falsity*' and basing its findings exclusively upon the facts and law that plaintiff was severely lacking in any evidence to prove defendants published the Article with *'knowledge of its falsity.'* [Emphasis *sic.*]

"5. The Court erred in failing to apply the legal standards set forth in Rule 50(A)(4), in ruling upon defendant's Motion For Directed Verdict.

"6. Should the Appellate Court apply Rule 50(A)(4) to the trial proceeding and ruling in the lower court, then Appellant alleges the trial court erred in effect in its findings that:

"(a) That reasonable minds could not draw different inferences or conclusions from the evidence presented, relevant to the Actual Malice test i.e. knowledge of its falsity, and/or defendant's total disregard for truth or falsity;

"(b) That reasonable minds could come to but one conclusion, after construing the evidence most strongly in favor of the plaintiff, that there was no dispute, doubt, conflicting testimony, question, or any evidence in plaintiff's case to prove that defendant acted with Actual Malice i.e. knowledge of its falsity, and/or total disregard for truth or falsity in publishing the alleged libelous publication.

"7. The Court erred in denying appellant the right to introduce into evidence the transcript of the record of the case of Ray Barrett v. OHSAA in the Court of Common Pleas, Franklin County.

"8. The Court erred in its ruling upon defendant's Motion For Directed Verdict, by failing to mention the requirement set forth in Ohio Rule 50(E); and in fact, not construing the evidence most strongly in favor of the plaintiff.

"9. The Court erred in its ruling by holding in effect that there was no controversial evidence of any determinative issue for the jury to weigh and that to submit the case to the jury would permit them an opportunity to do unreasonable harm to the parties.

"10. The Court erred in its ruling that the defendants acted upon a reliable source."

In the instant case we have some of the attributes of *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254. However, we have the additional element involved that the alleged lies spoken of in the news article were made after judicial ascertainment of where the truth lay as it concerned the trial in which the alleged lies were supposedly uttered.

The *New York Times* case, as we understand it, stands for the proposition that a public official or person such as the plaintiff herein is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice."

—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

All assignments, except Assignments of Error Nos. 7 and 10, direct themselves to the impropriety of granting the directed verdict. In furtherance of our above commentary, we hold that the trial court did err. In typical cases such as the *New York Times* case, the libel alleged had still to be subjected to judicial process to determine whether libel existed. In the instant case, a court of law, based on the evidence before it, and having the right to determine where the truth lay, even though on a due process question, determined the truth in favor of the plaintiff and the wrestling team he coached. Thus, he had his day in court and was, at that time at least, exonerated by the only recognized arbiter of the truth in our American judicial system, but thereafter was still called a liar for the testimony he allegedly gave during that trial. Had the news article simply stated that the court, in the newspaper's judgment, erred, or that the reporter's understanding of the facts differed from that of the court, no question of libel would be before us. It would appear that, though the press might be at liberty to criticize the judicial process and the results of a given case, unless and until the judgment of the court is overturned on appeal, the determination of what constitutes the truth has been made. Thus, any news article written either as fact as a news item, or as opinion, that is published knowing that it conflicts with a judicial determination of the truth, may, in our opinion, be regarded as a reckless disregard of the truth so as to constitute "actual malice" so as to be actionable libel of a public person. Whether, in a given case, it constitutes a reckless disregard of the truth, is not, in our opinion, a question of law, but a question of fact based on the evidence before the court.

Thus, where the evidence includes the factual data that (1) a decision was rendered by a trial court in Franklin County on a related matter, (2) that defendant Diadiun acknowledged he knew such decision was rendered in favor of the plaintiff herein and his team of wrestlers, (3) that he did not attend that trial, and (4) that he did not read the transcript of that trial, it would appear that it is a jury question as to whether the reporter and his newspaper acted with reckless disregard of the truth.

We recognize that it has long been held that a motion for a directed verdict raises a question of law only. *Michigan-Ohio-Indiana Coal Assn.* v. *Nigh* (1936), 131 Ohio St. 405. Further, if the facts are undisputed, the issue is one for the court; but, where the circumstances are such that reasonable minds might reach different conclusions as to the inferences to be drawn from the undisputed evidence, there arises a question of fact for the jury. *Bennett* v. *Sinclair Refining Co.* (1944), 144 Ohio St. 139; *Snider* v. *Rollins* (1921), 102 Ohio St. 372; *Slyder* v. *Bd. of Commrs.* (1938), 133 Ohio St. 146; *Yackee* v. *Napoleon* (1939), 135 Ohio St. 344; *Hamden Lodge* v. *Ohio Fuel Gas Co.* (1934), 127 Ohio St. 469.

For the reasons indicated, we find all assignments, except Assignments of Error Nos. 7 and 10, at least to the extent they relate to the order granting a directed verdict for the defendants, are well taken.

Assignment of Error No. 7, in our opinion, is without merit. The trial judge in the Franklin County case was the arbiter of the facts. It was his duty to weigh and decide what was determined by the evidence. That determination having been made by that court, its judgment is final unless reversed on appeal. The question of whether the defendants had a justifiable basis for the publication of the "big lie" article so as to exonerate the defendants from either "actual malice" or such reckless disregard of the truth as to constitute malice as set forth in the *New York Times* case, must, in our opinion, be predicated on the trial court's decision in that case and not on the evidence elicited therein.

Assignment of Error No. 10, that the court erred in its ruling that the defendants acted upon a reliable source, is well taken, although not for the reasoning expressed by the appellant. The reliability and believability of the source is for the trier of facts. Paragraphs 3 and 4 of the syllabus in *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, are pertinent, to wit:

"3. A motion for directed verdict or a motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.

"4. It is the duty of a trial court to submit an essential issue to the jury when there *is* sufficient evidence relating to that issue to permit reasonable minds to reach different con-

clusions on that issue, or, conversely, to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." (Emphasis *sic.*)

We think that the trial court erred in considering the question of reliability of the source of the "defamatory" statements published when the basis for ruling on a directed verdict is not based on factual issues but on questions of law.

For the reasons indicated, the judgment of the trial court is reversed and the cause remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

CONNORS, J., concurs.

COOK, J., dissenting. I respectfully dissent from the majority opinion of the court.

The sole question in the instant cause is whether the trial court erred in granting appellees' motion for directed verdict at the conclusion of the appellant's evidence.

Civ. R. 50(A), in pertinent part, states:

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

A review of the evidence offered by the appellant in the proceedings below indicates reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion was adverse to the party against whom the motion was directed, the appellant.

The benchmark case in libel law in the United States is *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254. In the *New York Times* case, the United States Supreme Court stated, at pages 279 to 280:

"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with

'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

In *Curtis Publishing Co.* v. *Butts* (1967), 388 U. S. 130, the United States Supreme Court extended the First Amendment safeguards of the *New York Times* case to those defending libel actions brought by public figures as well as public officials. Appellant was found by the trial court to be a public figure.

Here, the newspaper article written by Ted Diadiun of the Willoughby News-Herald was based on what he had personally observed at the wrestling match where the incident occurred and the testimony he had personally heard appellant give at the hearing before OHSAA and what he had supposedly learned about appellant's testimony at a judicial hearing in the Court of Common Pleas of Franklin County from Dr. Harold Meyer, Commissioner of the OHSAA, in a telephone conversation. Diadiun concluded that appellant had allegedly lied in the Franklin County court proceedings.

The important question is whether Ted Diadiun wrote his article with "actual malice" towards appellant, as required by the *New York Times* case. In other words, did Diadiun write his article knowing it was false or with reckless disregard of whether it was false or not.

At the conclusion of appellant's evidence in the court below, there was no evidence before the court that Diadiun wrote the article with "actual malice" against the appellant.

Rather, the evidence indicated Diadiun wrote the article based on his personal observations as to what occurred at the wrestling match and what appellant testified to at the OHSAA hearing in addition to what Dr. Meyer had indicated to him about appellant's testimony in court. Based on these sources of information, Diadiun expressed his opinion as to the statements of appellant in the Franklin County court proceedings. Diadiun believed his article to be true.

I am of the opinion that the article written by Diadiun falls within the limits of the court's words, at page 269, of the *New York Times* case:

" '[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions,'***and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.' "

152

I would affirm the judgment of the trial court.

CONNORS, J., of the Sixth Appellate District, sitting by designation in the Eleventh Appellate District.