No. 80–100. LORAIN JOURNAL CO. ET AL. *v*. MILKOVICH. Ct. App. Ohio, Lake County. Motions of Beacon Journal Publishing Co. et al. and Ohio Newspapers Association for leave to file briefs as *amici curiae* granted. Certiorari denied. JUSTICE STEWART would deny this petition for want of a final judgment.

JUSTICE BRENNAN, dissenting.

This petition for certiorari raises an important question concerning limitations on the authority of trial courts to grant dismissals, summary judgments, or judgments notwithstanding the verdict[1] in favor of media defendants in libel actions, based on the qualified privilege outlined in *New York Times Co.* v. *Sullivan,* 376 U. S. 254 (1964).

On January 8, 1975, the News-Herald of Willoughby, Ohio, published a column by sportswriter Ted Diadiun criticizing respondent Michael Milkovich, a wrestling coach at Maple Heights High School, who is treated as a "public figure" for purposes of this case. Headlined "Maple beat the law with the 'big lie,'" the column accused Milkovich of lying about a fracas that occurred during one of his team's wrestling matches.

On February 9, 1974, the Maple High wrestling team, coached by Milkovich, faced a team from Mentor High School. A brawl involving both wrestlers and spectators erupted after a controversial ruling by a referee. Several wrestlers were injured. The Ohio High School Athletic Association (OHSAA) subsequently conducted a hearing into the occurrence, censured Milkovich for his conduct at the match,

---

[1] Although the decision below concerned directed verdicts, its holding would affect the courts' treatment of summary judgments and judgments notwithstanding the verdict as well. In each of these situations, the court is called upon to answer the same question: whether there is sufficient evidence for the jury to find actual malice under the applicable "clear and convincing evidence" burden of proof.

placed his team on probation for the school year, and declared the team ineligible to compete in the state wrestling tournament. Diadiun attended and reported on both the match and the hearing, at which Milkovich had defended his behavior. Thereafter, a group of parents and high school wrestlers filed suit in Franklin County Common Pleas Court, claiming that the OHSAA had denied the team due process. Milkovich, not a party to that lawsuit, appeared as a witness for the plaintiffs. On January 7, 1975, the court held that due process had been denied, and enjoined the team's suspension. *Barrett* v. *Ohio High School Athletic Assn.*, No. 74CV–09–3390.[2]

Diadiun did not attend the court hearing, review the transcript, or read the court's opinion, but he wrote a column about the decision based on his own recollection of the wrestling match and ensuing OHSAA hearing and on a description of the court proceeding given him by an OHSAA Commissioner. In the column, Diadiun stated that Milkovich and others had "misrepresented" the occurrences at the OHSAA hearing, and that Milkovich's testimony "had enough contradictions and obvious untruths so that the six board members were able to see through it." Diadiun went on to say, however, that at the later court hearing Milkovich and a fellow witness "apparently had their version of the incident polished and reconstructed, and the judge apparently believed them." Diadiun concluded that anyone who had attended the match "knows in his heart that Milkovich . . . lied at the hearing after. . . having given his solemn oath to tell the truth. But [he] got away with it."

Milkovich filed a libel action in state court against petitioners Diadiun, the News-Herald, and the latter's parent

---

[2] The court ruled that the wrestling team was denied its right to cross-examine witnesses and to call witnesses on its behalf. The court did not make any factual findings concerning the underlying occurrences, nor did it comment on those occurrences.

corporation. Petitioners moved for summary judgment. The court held that Milkovich is a public figure for purposes of the *New York Times* test,[3] but denied summary judgment. The action was then tried to a jury. After five days of trial, at the close of Milkovich's evidence, petitioners moved for a directed verdict. They argued that Milkovich had failed to proffer sufficient evidence from which the jury could conclude that Diadiun's column had been published with actual malice under the *New York Times* test. The court granted the motion for directed verdict, stating that the evidence, considered most strongly in favor of Milkovich, "fails to establish by clear and convincing proof that the article . . . was published with knowledge of its falsity or in reckless disregard of the truth."

Milkovich appealed to the State Court of Appeals, which reversed and remanded for trial. The court stated that Diadiun's column conflicted with the factual determination reached in the earlier Common Pleas Court injunctive action, and held that this conflict alone constituted sufficient evidence of actual malice to withstand petitioner's motion for directed verdict.[4] Petitioners appealed to the Ohio Supreme Court,

---

[3] The ruling that Milkovich is a public figure is unchallenged.

[4] The court stated:

"In the instant case, a court of law, based on the evidence before it, and having the right to determine where the truth lay, even though on a due process question, determined the truth in favor of the plaintiff and the wrestling team he coached. Thus, he had his day in court and was, at that time at least, exonerated by the only recognized arbiter of the truth in our American judicial system, but thereafter was still called a liar for the testimony he allegedly gave during that trial. . . . It would appear that, though the press might be at liberty to criticize the judicial process and the results of a given case, unless and until the judgment of the court is overturned on appeal, the determination of what constitutes the truth has been made. Thus, any news article written either as fact as a news item, or as opinion, that is published knowing that it conflicts with a judicial determination of the truth, may, in our opinion, be regarded as a reckless disregard of the truth so as to constitute 'actual

and also sought review in the nature of certiorari. The Ohio Supreme Court dismissed the appeal as raising "no substantial constitutional question" and otherwise denied review. The court also denied petitioners' motion for rehearing.[5]

The import of the Ohio appellate court's holding is plainly that, even in the absence of proof of knowing falsehood or reckless disregard for the truth, a newspaper forfeits its right to a directed verdict, summary judgment, or judgment notwithstanding the verdict on the issue of actual malice if it has published a statement that conflicts, however tangentially, with a decision by a court. This holding is clearly contrary to the First Amendment and to the relevant precedents of this Court. I had supposed it was settled that newspapers are privileged to publish their views of the facts, so long as those views are not recklessly or knowingly false. It matters not that such views may conflict with those of a court, for the press is free to differ with judicial determinations. In the libel area, neither a court nor any other institution is the "recognized arbiter of the truth," as the court below asserted. See *Gertz* v. *Robert Welch, Inc.,* 418 U. S. 323, 339–340 (1974).[6]

---

malice' so as to be actionable libel of a public person. Whether, in a given case, it constitutes a reckless disregard of the truth, is not, in our opinion, a question of law, but a question of fact based on the evidence before the court." 65 Ohio App. 2d 143, 146, 416 N. E. 2d 662, 666 (1979).

[5] Although the appellate court below remanded the case for retrial, including a jury determination on the actual-malice issue, the decision was nonetheless a final judgment for purposes of 28 U. S. C. § 1257. A decision in favor of petitioners would terminate the litigation, while a failure to decide the question now would leave the press in Ohio "operating in the shadow of . . . a rule of law . . . the constitutionality of which is in serious doubt." *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 486 (1975); *Miami Herald Publishing Co.* v. *Tornillo,* 418 U. S. 241, 246–247 (1974).

[6] Indeed, at common law, a factual finding embodied in the judgment in another cause could not even be used as evidence of that fact in court. 5 J. Wigmore, Evidence § 1671a, pp. 806–807 (Chadbourn rev. 1974).

One part of the "strategic protection" that decisions of this Court have extended to the press in the libel area is the insistence that a public figure can prevail "only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz* v. *Robert Welch, Inc., supra,* at 342; *New York Times Co.* v. *Sullivan,* 376 U. S., at 285–286. The court in a libel action has a responsibility to ensure that sufficient evidence of actual malice has been introduced to permit a jury finding under this exacting standard. This protection must not be withdrawn merely because the press account may have differed with the conclusions of a court, lest the "uninhibited, robust, and wide-open," *New York Times* v. *Sullivan, supra,* at 270, discussion of judicial proceedings be deterred. See *Richmond Newspapers, Inc.* v. *Virginia,* 448 U. S. 555 (1980).

The consequence of the erroneous ruling in this case is particularly apparent on the facts: petitioners were denied a directed verdict on the strength of a prior court opinion that did not even discuss, let alone decide, what had happened at the disrupted wrestling match or whether Milkovich had testified truthfully. The court had merely ruled that the Maple High School wrestling team was denied certain procedural safeguards required under due process. Thus, it is abundantly apparent that the state court's conclusion that Diadiun wrote this column "knowing that it conflicts with a judicial determination of the truth" is unpersuasive even on its own terms.

Because in my view the decision of the Ohio appellate court in this case seriously contravenes the principles of the First Amendment as interpreted by this Court, and threatens to chill the freedom of newspapers in Ohio to publish their view of the facts where they differ with the view of the courts, I dissent and would grant certiorari to review this important question of constitutional law.