**John S. RILEY, Plaintiff Below, Appellant,**

v.

**Ralph S. MOYED and Gannett Co., Inc., Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: Jan. 13, 1987.
Decided: June 25, 1987.

Christopher J. Curtin (argued), H. Murray Sawyer, Jr., and Bruce C. Herron, of Sawyer & Akin, P.A., Wilmington, for appellant.

Richard G. Elliott, Jr. (argued) and Charles M. Cochran IV of Richards, Layton & Finger, Wilmington, for appellees.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

HORSEY, Justice:

In this action for libel, plaintiff, John S. Riley, appeals Superior Court's grant of defendants', Gannett Company, Inc., owner of *The Morning News*, and writer Ralph S.

Moyed, motion for summary judgment. We affirm.

\* \* \*

The alleged libel was contained in Moyed's column published in Wilmington, Delaware in the *Morning News* on November 18, 1983. In the column, Moyed accused certain New Castle County politicians of allowing the zoning process in the County to degenerate into private battles between commercial interests and criticized several politicians for their ties with special interests. Moyed stated that John Riley, then a member of the New Castle County Council, and hence a public figure, had "enjoyed a golf outing with developer Albert Marta," and afterwards "seemed more understanding of Marta's plan for turning the Brandywine Country Club into a regional shopping center—and Concord Pike into a parking lot." Later in the column, Moyed stated that he did not "think that anyone could buy ... John Riley for 18 holes of golf" and that "[he] doubt[ed] that many citizens would want to spend half a day playing golf with some minor politicians...."

The Superior Court granted summary judgment in favor of Moyed and Gannett.[1] The Court found that, aside from the statement that Riley had enjoyed a golf outing with Marta, the references to Riley were protected expressions of opinion. The Court then ruled that the golf outing statement, though false in its implication of a recent outing, was incapable of a defamatory meaning and, in any event, the statement was substantially true. Relying on section 566 of the *Restatement (Second) of Torts*, the Court concluded that opinions based on nondefamatory facts do not give rise to an action for libel.

I

■ Before a public figure such as Riley can recover from a news publisher in a libel action, he must show by clear and convincing evidence that the defendant published defamatory falsehoods with actual malice. *Bose Corp. v. Consumers Union*, 466 U.S.

1. William Duffy, retired Justice of this Court, sitting by designation pursuant to Art. IV § 38 of the Delaware Constitution, authored the opinion of the Superior Court.

485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Furthermore, a public figure has the burden of showing falsity. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986).

 However, before a Court reaches the question of actual malice, it must determine two questions of law: *first,* whether alleged defamatory statements are expressions of fact or protected expressions of opinion; and *two,* whether the challenged statements are capable of a defamatory meaning.[2] If a court determines that the statements are protected expressions of opinion or that they are not capable of a defamatory meaning, it will not reach the actual malice issue or need to inquire into the defendant's state of mind. *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). That principle governs this case.

### A.

 Pure expressions of opinion are protected under the First Amendment. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).[3] As the Supreme Court stated in *Gertz:*

Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of facts.

*Id.* at 339–40, 94 S.Ct. at 3007.

 A pure opinion is one that is based on stated facts or facts that are known to the parties or assumed by them to exist. *Dairy Stores, Inc. v. Sentinel Publishing Co.,* 104 N.J. 125, 516 A.2d 220, 231 (1986); *Kotlikoff v. The Community News,* 89 N.J. 62, 444 A.2d 1086, 1089 (1982). In contrast, a "mixed" opinion is one that is not based on facts that are stated or assumed by the parties to exist. *Dairy Stores, supra; Kotlikoff, supra.* Thus, a defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. *Kotlikoff, supra; Restatement (Second) of Torts* § 566 (1977). (See section II B below.)

### B.

 In analyzing whether a particular statement is an expression of fact or opinion and, if opinion, whether pure or mixed, we must consider it from the perspective of an ordinary reader of the statement. *Mr. Chow of New York v. Ste. Jour Azur S.A.,* 2 Cir., 759 F.2d 219, 224 (1985); *Ollman v. Evans,* D.C.Cir., 750 F.2d 970, 979 n. 16 (1984) (en banc), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). It is also well settled that the determination of whether a statement is opinion as opposed to a factual representation is a question of law. *Slawik v. News-Journal Co.,* Del.Supr., 428 A.2d 15, 17 (1981). *See also Mr. Chow, supra* at 224; *Ollman, supra* at 978.

 In *Ollman, supra,* the Court developed a four-part test to determine whether the average reader would view a statement as one of fact or one of opinion. 750 F.2d at 979–85. First, the Court should analyze the common usage or meaning of the challenged language. *Id* at 979. Second, the Court should determine whether the statement can be objectively verified as true or false. *Id.* at 981. Third, the Court should consider the full context of the statement. *Id.* at 982. Fourth, the Court should con-

---

**2.** Because these are questions of law to be determined by the court, the summary judgment procedure is often applied in this area of the law to avoid unnecessary legal fees and discourage frivolous suits. *Kotlikoff v. The Community News,* 89 N.J. 62, 444 A.2d 1086, 1088 (1982). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**3.** *See also Restatement (Second) of Torts* § 566, comment c, stating that a pure expression of opinion "is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be."

sider the broader social context into which the statement fits. *Id.* at 984.

## C.

Applying the *Ollman* test to the facts of this case, we conclude that, other than the statement that Riley had played golf with Marta, Moyed's statements about Riley are constitutionally protected expressions of pure opinion.

*First,* as to the meaning of the specific language used in the challenged statements, Riley asserts that it implies that he was guilty of profiteering and receiving unlawful gratuities, both of which are crimes under the Delaware Code. *See* 11 *Del.C.* §§ 1212(3) and 1206.[4] We disagree that an ordinary reader would draw such an inference from the statements. There is no implication in the column that Riley received any benefit, pecuniary or otherwise, which is a necessary element of both profiteering and the receipt of unlawful gratuities. Rather, the common meaning of the challenged language is that, in Moyed's opinion, Riley and a number of other politicians spent more time listening to developers than to their constituents.

"A statement regarding (1) a public official's business, social, or political affiliations, and (2) how those affiliations seem reflected in decision-making hardly constitutes a libelous charge of bribery and corruption." *Okun v. Superior Court of Los Angeles County,* 29 Cal.3d 442, 175 Cal. Rptr. 157, 629 P.2d 1369, 1374 (en banc), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981). A contrary ruling would inhibit a significant segment of discourse vital in a democracy. *Id.* In this case, "even the most careless readers must have perceived that the [words were] no more than rhetorical hyperbole." *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 14, 90 S.Ct. 1537, 1542, 26 L.Ed.2d 6 (1970).

*Second,* it is also apparent that the challenged statements, other than the golf outing statement, cannot be objectively verified. An ordinary reader trying to determine whether after a golf game with Marta, Riley "seemed more understanding" of Marta's plan, would have an impossible task of objectively verifying its truth or falsity and would be left with nothing but his own subjective impression of how Riley "seemed." Therefore, a reader cannot rationally view an unverifiable statement as conveying actual facts. *Ollman,* 750 F.2d at 981.

*Third,* considering the full context of the statements, it is reasonable to conclude that average readers of the *Morning News* are familiar with Moyed's disparaging style of writing. Moyed has been a full-time writer-commentator with the *Morning News* since 1978. He is a well-known professional provocateur who relies on heavy sarcasm to create controversy or convey a message. Readers expect that commentators such as he will make strong statements, sometimes phrased in a polemical manner that would hardly be considered balanced or fair elsewhere as a news reporting column. *Id.* at 986. "[I]t is [also] well understood that editorial writers and commentators frequently resort to the type of caustic bombast traditionally used in editorial writing to stimulate public reaction." *Id.* at 984. Furthermore, the constitutional protection afforded statements of opinion is not lost simply because the opinion is expressed through the use of figurative or hyperbolic language. *Mr. Chow,* 759 F.2d at 223. Thus, viewed in the context of the entire article, Moyed's writing style and purpose were obviously on dis-

---

**4.** 11 *Del.C.* § 1212(3) provides:

A public servant is guilty of profiteering when, in contemplation of official action by himself or by a governmental entity with which he is associated, or in reliance on information to which he has access in his official capacity and which has not been made public:

\* \* \* \* \* \*

(3) He aids another person to do any of the foregoing acts, intending to gain thereby a personal benefit.

11 *Del.C.* § 1206 provides:

A public servant is guilty of receiving unlawful gratuities when he solicits, accepts or agrees to accept any personal benefit for engaging [in] official conduct which he is required or authorized to perform, and for which he is not entitled to any special or additional compensation.

play and ordinary readers would be unwilling to infer factual content into his statements.

*Fourth,* considering the broader social context in which the column appeared, *i.e.,* that it addressed a current topic of ongoing public debate over a perceived excessive amount of development in the Concord Pike area of the County, language which might otherwise be considered statements of fact have here assumed the character of statements of opinion. *Okun, supra* at 1374.[5]

Therefore, based upon the foregoing analysis, we find that other than the statement that Riley had played golf, with Marta, Moyed's statements about Riley are constitutionally protected expressions of pure opinion because an ordinary reader would not infer the existence of undisclosed facts.

## II

■ We turn to the second question of law, namely, whether the factual statement that Riley had played golf with Marta was a defamatory statement. Only if the Court determines, in the first instance, that the words are capable of a defamatory meaning may a jury consider whether such meaning is to be ascribed to the words. *Slawik v. News-Journal Co.,* Del.Supr., 428 A.2d 15, 17 (1981); *Gordon v. News-Journal Co.,* 36 Del. 396, 176 A. 657, 661 (1935), *overruled on other grounds, Read v. News-Journal Co.,* Del.Supr., 474 A.2d 119, 121 (1984).

■ Assuming that the golf outing statement was a false statement,[6] that fact alone will not support a cause of action for libel. The statement must also be defamatory. *Restatement (Second) of Torts,* § 558(a). Statements which are critical of a plaintiff and disparage his performance but do not lower him in the estimation of the community or deter third persons from

associating or dealing with him, nor injure his reputation in the popular sense, are not defamatory. *Andres v. Williams,* Del. Supr., 405 A.2d 121, 122 (1979). The Court must take the words in their plain and natural meaning and understand them as would a person of average intelligence and perception. *Danias v. Fakis,* Del.Super., 261 A.2d 529, 531 (1969).

We find, as a matter of law, that there is nothing defamatory in· Moyed's statement that Riley had played a game of golf with Marta, even though Riley was a County Council member and Marta was a developer. "It is never libelous to accuse one of doing a legal act although strong epithets are used in describing the act." *Golden North Airways, Inc. v. Tanana Publishing Co.,* 9th Cir., 218 F.2d 612, 625 (1954); *H.O. Merren & Co. v. A.H. Belo Corp.,* N.D.Tex., 228 F.Supp. 515, 518–19 (1964), *aff'd,* 5th Cir., 346 F.2d 568 (1965). *Accord Okun, supra* at 1374. Thus, Moyed's allegedly false factual statement, when coupled with his opinion based thereon, is simply not actionable libel as a matter of law.

## A.

■ However, even if we construed the golf outing statement to mean that Riley had committed an unlawful act, defendants would not be liable because Moyed's statement was substantially true. Under Delaware law there is no liability for defamation when a statement is determined to be substantially true. *Gannett Co., Inc. v. Re,* Del.Supr., 496 A.2d 553, 557 (1985). If the alleged libel was no more damaging to the plaintiff's reputation in the mind of the average reader than a truthful statement would have been, then the statement is substantially true. *Id.* In making this evaluation, we must consider whether the "gist" or "sting" of the article was true. *Id.* The gist or sting is true "if it produces the same effect on the mind of the recipient which the precise truth would have produc-

---

5. In *Okun, supra,* the Supreme Court of California stated:
 "[W]here potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their position by use of epithets, fiery rhetoric or hyperbole, language

which generally might be considered as statements of fact may well assume the character of statements of opinion."
629 P.2d at 1374.

6. Riley had played golf with Marta in 1977, but not recently as the statement implied.

ed." *Williams v. WCAU–TV*, E.D.Pa., 555 F.Supp. 198, 202 (1983). *See also Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 477 A.2d 1005, 1010 (1984).

■ In this case, the gist or sting of the entire column is that Riley engaged in social activities with developers in which their projects were discussed. Riley concedes that he met with W.F. Hansen, President of Brandywine Raceway, at lunch to "discuss the future of the racetrack." He also had breakfast with and listened to a presentation by George Jarvis, a lobbyist from Delmarva Power and Light Company, concerning rezoning for a power plant. The effect upon the reader had either of these precisely true incidents been reported would have been exactly the same as the report of the golf game. Therefore, substantial truth is a further defense for holding that Moyed and Gannett are not liable for defamation.

### B.

■ Finally, we must reject Riley's assertion that opinions based on statements that are false are actionable. To support a cause of action for libel, the underlying facts must be false as well as defamatory. When an opinion is accompanied by its underlying *nondefamatory* factual basis, a defamation action premised upon that opinion will fail no matter how unjustified, unreasonable or derogatory the opinion might be. *Kotlikoff*, 444 A.2d at 1091 (underlining added for emphasis). This is so because readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified. *Id. Restatement (Second) of Torts* § 566, comment c, also provides that opinions based on nondefamatory facts cannot result in liability either for the facts or the opinion. Since we have concluded, as a matter of law, that the golf outing statement is nondefamatory, Moyed and Gannett cannot be found liable for Moyed's opinion based upon that statement.

\* \* \*

AFFIRMED.