SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

February 9, 2018

Daniel F. McAllister, Esquire
Aaron C. Baker, Esquire
Baird Mandalas Brockstedt, LLC
6 South State Street
Dover, DE 19901

Daniel C. Herr, Esquire
Law Office of Daniel C. Herr, LLC
1225 N. King Street, Suite 1000
Wilmington, DE 19801

RE: *Orthopaedic Associates of Southern Delaware, P.A., v. William L. Pfaff, III, Lewes Spine Center, LLC, and Corie L. Wingate*
**C.A. No. S17C-07-016 ESB**

Dear Counsel:

This is my decision on Plaintiff Orthopaedic Associates of Southern Delaware, P.A.'s ("OASD") Motion to Dismiss the counterclaim filed against OASD by Defendants William L. Pfaff, III, and the Lewes Spine Center, LLC. OASD is a Delaware professional association which owns and operates a medical practice providing medical and surgical care at five locations throughout Sussex County, Delaware. Dr. Pfaff is a physician who was employed by OASD for a number of years until he left on April 30, 2017. Dr. Pfaff then formed the Lewes Spine Center, LLC, on May 5, 2017. The counterclaim alleges that OASD (1) tortiously interfered with the existing and prospective business relations of Dr. Pfaff and the Lewes Spine Center, (2) breached the 2017 Separation Agreement between OASD and Dr. Pfaff

when it disparaged Dr. Pfaff, and (3) defamed both Dr. Pfaff and the Lewes Spine Center through statements made to his patients.[1] OASD argues that Dr. Pfaff and the Lewes Spine Center have failed to allege facts sufficient to support any of the claims in their counterclaim. I have concluded that the claims alleged by Dr. Pfaff and the Lewes Spine Center against OASD are conclusory and that no conceivable set of facts exist that would support a path to recovery.

## STATEMENT OF THE FACTS[2]

Dr. Pfaff wrote a letter to his patients in June 2017 after he left his employment with OASD. OASD accidently received a copy of the "June Letter" in or around early June 2017. The June Letter informed Dr. Pfaff's patients that he had left his job with OASD and would be starting a new medical practice. The June Letter provided Dr. Pfaff's patients with his new contact information. Prior to receiving the June Letter, OASD generally instructed its staff to tell any patient that asked about Dr. Pfaff that he was on a leave of absence. OASD also instructed its staff not to speak to Dr. Pfaff and call the police if they saw him on its premises.

Subsequent to receiving the June Letter, OASD did not inform Dr. Pfaff's

---

[1] Dr. Pfaff and the Lewes Spine Center allege that OASD committed both defamation and defamation *per se* in separate but combined counts which are listed under one heading in the counterclaim as Counts III and IV.

[2] The necessary facts relevant to this motion are taken from the counterclaim.

2

patients that he had opened the Lewes Spine Center nor did it provide any contact information for either him or his new medical practice. Instead, OASD informed Dr. Pfaff's patients that they were unaware of Dr. Pfaff's whereabouts but that they could see one of OASD's physicians if they desired. This occurred in part because OASD allegedly did not communicate to its staff (1) the existence of the Lewes Spine Center or (2) the new contact information for Dr. Pfaff and the Lewes Spine Center.

According to Dr. Pfaff, in or around June 2017, OASD informed one of his patients that OASD was unaware of his whereabouts.[3] This patient then located the Lewes Spine Center and Dr. Pfaff through an internet search, and subsequently informed OASD of the Lewes Spine Center's existence along with the newly discovered contact information. OASD's employee then informed this patient that OASD did not want any contact information for either the Lewes Spine Center or Dr. Pfaff. Several patients eventually came to the Lewes Spine Center for treatment with Dr. Pfaff and explained that OASD informed them that OASD did not know anything about Dr. Pfaff's whereabouts or whether Dr. Pfaff was still practicing medicine.

## STANDARD OF REVIEW

The standards for a Rule 12(b)(6) motion to dismiss are clearly defined. The

---

[3] This patient is not identified in the record by name.

3

Court must accept all well-pled allegations as true.[4] The Court must then determine whether a plaintiff may recover under any reasonable set of circumstances that are susceptible of proof.[5] When deciding a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff.[6] As a general rule, when deciding a Rule 12(b)(6) motion, the Court is limited to considering only the facts alleged in the complaint and normally may not consider documents extrinsic to it. There are two exceptions, however, to this general rule.[7] "The first exception is when the document is integral to a plaintiff's claim and incorporated into the complaint. The second exception is when the document is not being relied upon to prove the truth of its contents."[8] "Where allegations are merely conclusory, however (*i.e.*, without specific allegations of fact to support them), they may be deemed insufficient to withstand a motion to dismiss."[9] Dismissal will not be granted if the complaint "gives general notice as to the nature

---

[4] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[5] *Id.*

[6] *Ramunno v. Crawley*, 705 A.2d 1029 (Del. 1998).

[7] See *Vanderbilt Income & Growth Assocs., L.L.C., v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996).

[8] *Vanderbilt*, 691 A.2d at 613.

[9] *Lord v. Souder*, 748 A.2d 393, 398 (Del. 2000).

4

of the claim asserted against the defendant."[10]  A claim will not be dismissed unless it is clearly without merit, which may be either a matter of law or fact.[11]  Vagueness or lack of detail in the pleaded claim are insufficient grounds upon which to dismiss a complaint under Rule 12(b)(6).[12]  If there is a basis upon which the plaintiff may recover, the motion is denied.[13]

## DISCUSSION

### I. Tortious Interference With a Business Relationship

Dr. Pfaff and the Lewes Spine Center allege that OASD tortiously interfered with their existing and prospective business relationships.  Dr. Pfaff alleges that one of his patients was informed by OASD that OASD was unaware of Dr. Pfaff's whereabouts and that the patient could see one of OASD's physicians in place of Dr. Pfaff.  Dr. Pfaff also alleges that OASD failed to inform his patients about the Lewes Spine Center and refused to provide his patients with his new contact information.

OASD argues that Dr. Pfaff and the Lewes Spine Center have failed to plead a claim for tortious interference with business relations.  OASD argues further that

---

[10] *Diamond State Telephone v. University of Delaware*, 269 A.2d 52, 58 (Del. 1970).

[11] *Id.*

[12] *Id.*

[13] *Id.*

5

Dr. Pfaff and the Lewes Spine Center's counterclaim fails to allege the necessary elements of a claim for tortious interference with a business relation because there are no facts in the record demonstrating (1) that Dr. Pfaff and the Lewes Spine Center had the reasonable probability of a business opportunity, and (2) the intentional interference by OASD with that business opportunity.

To establish a tortious interference with a prospective business opportunity claim, a plaintiff must prove each of the following elements: (1) the reasonable probability of a business opportunity; (2) the intentional interference by the defendant with that business opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of the defendant's privilege to compete or protect his business interests in a fair and lawful manner.[14] To meet the reasonable probability of a business opportunity prong, a plaintiff "must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm."[15] To meet the intentional interference prong, a plaintiff must prove that the defendant's interference with the plaintiff's business opportunity was intentional and

---

[14] *U.S. Bank National Association v. Gunn*, 23 F.Supp.3d 426, 436 (D.Del. 2014) citing *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981).

[15] *U.S. Bank National Association*, 23 F.Supp.3d at 436.

wrongful or improper.[16] When considering whether a defendant's actions were improper, the Court must assess these actions "in light of a defendant's privilege to compete or protect [its] business in a fair and lawful manner."[17]

## A. Reasonable Probability of a Business Opportunity

OASD argues that in order to meet the first element of tortious interference with business relations, Dr. Pfaff and the Lewes Spine Center "must identify a specific party who was prepared to enter into a business relationship [with them] but was dissuaded from doing so by [OASD] and cannot rely on generalized allegations of harm."[18] While it is not necessary to identify such a party by name, a complaint must allege enough detail for the Court to be able to infer the existence of specific parties who presented an existing or potential business opportunity."[19] Furthermore, "[t]o be reasonably probable, a business opportunity must be something more than a mere hope or the innate optimism of the salesman or a mere perception of a prospective business relationship."[20]

Dr. Pfaff and the Lewes Spine Center's counterclaim only mentions

---

[16] *Id.*

[17] *Id.* citing *DeBonaventura*, 428 A.2d at 1153.

[18] *Agilent Techs., Inc., v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009).

[19] *Id.*

[20] *Id.*

7

unidentified, unspecified patients based upon generalized statements of harm. There is no allegation concerning a specific patient, or any patient at all for that matter, that was prepared to enter into a business relationship with Dr. Pfaff and the Lewes Spine Center but was dissuaded by OASD from doing so. There are only generalized allegations about unknown patients. The first example cited by Dr. Pfaff and the Lewes Spine Center discusses a patient who came into OASD and attempted to provide Dr. Pfaff's contact information to an OASD employee that the patient found after performing an internet search for Dr. Pfaff. Dr. Pfaff and the Lewes Spine Center fail to state if that person was dissuaded from entering into a business relationship with Dr. Pfaff and the Lewes Spine Center, leaving me without enough information to evaluate this example. The second example cited by Dr. Pfaff and the Lewes Spine Center discusses patients that did ultimately seek treatment from Dr. Pfaff and the Lewes Spine Center. The second example does not support Dr. Pfaff and the Lewes Spine Center's counterclaim because those patients did enter into a business relationship with Dr. Pfaff. Nothing in Dr. Pfaff and the Lewes Spine Center's counterclaim suggests the business opportunity of the unidentified, unspecified patients was reasonably probable or "anything more than a mere hope or the innate optimism of [Dr. Pfaff and the Lewes Spine Center] of a prospective

8

business relationship."[21]  I note that while Dr. Pfaff was treating patients at OASD, he was doing so at OASD's facilities, not at the Lewes Spine Center, a facility that did not exist at the time.  Put another way, Dr. Pfaff's claim to those patients seems no better than OASD's claim to them.  Dr. Pfaff and the Lewes Spine Center have failed to plead any facts that would establish they had a reasonable probability of a business opportunity with these unidentified, unspecified patients.

### B. Intentional Interference by OASD with that Opportunity

Dr. Pfaff and the Lewes Spine Center also fail to allege any action on the part of OASD or its employees that rises to a level of active interference with the prospective business relations of Dr. Pfaff and the Lewes Spine Center.  Dr. Pfaff and the Lewes Spine Center allege that OASD tortiously diverted patients that wanted to see Dr. Pfaff away from him.  "An alleged interference in a prospective business relationship is only actionable if it is wrongful."[22]  Dr. Pfaff and the Lewes Spine Center allege that (1) OASD's staff told patients that Dr. Pfaff was on a leave of absence, (2) OASD's staff told patients that OASD was unaware of Dr. Pfaff's whereabouts, (3) OASD's staff told patients that OASD did not know if Dr. Pfaff was still practicing medicine, (4) OASD's staff told patients that they could see an OASD

---

[21] *Id.*

[22] *Agilent Techs., v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009).

physician for treatment, and (5) OASD's staff failed to communicate to the patients the contact information for Dr. Pfaff and the Lewes Spine Center. Dr. Pfaff and the Lewes Spine Center have not stated why or how these actions are wrongful or actively interfered with their prospective business relations. Presumably, it is because OASD feigned ignorance of Dr. Pfaff's current circumstances and did not direct Dr. Pfaff's former patients to the Lewes Spine Center. There is nothing wrongful about what OASD said about Dr. Pfaff's current circumstances. Even viewing the actions as alleged by Dr. Pfaff and the Lewes Spine Center in a light most favorable to them, they fail to amount to wrongful interference.

Dr. Pfaff and the Lewes Spine Center also do not expound on their assumption that OASD was under an obligation to not only provide contact information for both Dr. Pfaff and the Lewes Spine Center to the patients, but also to help Dr. Pfaff and the Lewes Spine Center – who were now competitors – succeed at OASD's expense. I note that Dr. Pfaff did not even intend for OASD to have the information about him and the Lewes Spine Center. OASD got the information from the June Letter and from patients whose comments were unsolicited. It is more than a "stretch" for Dr. Pfaff to argue that OASD should have acted on information that he did not even intend for OASD to have. OASD has a legitimate privilege to compete and protect

10

its business in a fair and lawful manner.[23] As I noted before, Dr. Pfaff is apparently complaining about relationships with patients that he established while he was working for OASD. It is not wrongful for OASD to try to retain these patients for itself in the manner that it did. Dr. Pfaff and the Lewes Spine Center's allegation that OASD tortiously interfered with Dr. Pfaff and the Lewes Spine Center's prospective business relations is wholly conclusory, and there is simply no set of facts that would allow Dr. Pfaff and the Lewes Spine Center a path to recovery.[24] OASD's Motion to Dismiss Count I of the counterclaim filed by Dr. Pfaff and the Lewes Spine Center for the failure to state a claim for which relief may be granted is **GRANTED**.

## II. Breach of the Separation Agreement

Dr. Pfaff alleges that OASD breached the Separation Agreement by disparaging him. OASD and Dr. Pfaff entered into a Separation Agreement on May 17, 2017. Dr. Pfaff alleges that OASD breached paragraph 11 of the Separation Agreement by lying and/or feigning ignorance about his circumstances. Paragraph 11 of the Separation Agreement is titled "Non-disparagement." It states:

---

[23] It is also worth noting that the information in the June Letter that was not provided to OASD was mailed by Dr. Pfaff to his patients providing his contact information that he suggests OASD tortiously withheld from the same patients.

[24] It is significant to note that Count I of the counterclaim fails substantively because it fails to (1) state the law on tortious interference with a business relationship, which would provide the elements of the stated tort, and (2) how OASD violated each element of tortious interference with a business relationship.

11

"The parties agree not to make any oral or written communication to any person or entity which disparages, or has the effect of damaging the reputation of, or otherwise working in any way to the detriment of, the other party, except as required by local, state or federal law.  In view of the difficulty of determining and calculating the amount of damages that may result from a violation of this Section 10, each party agrees to pay to the other $1,000 as liquidated damages, and not as a penalty, for each and every violation of this Section."[25]

Disparagement is defined by Black's Law Dictionary as "1.  A derogatory comparison of one thing with another...  2.  The Act or an instance of castigating or detracting from the reputation of, esp. unfairly or untruthfully...  3.  A false and injurious statement that discredits or detracts from the reputation of another's character, property, product, or business..."[26]

Dr. Pfaff and the Lewes Spine Center allege that (1) OASD's staff told patients that Dr. Pfaff was on a leave of absence, (2) OASD's staff told patients that OASD was unaware of Dr. Pfaff's whereabouts, (3) OASD's staff told patients that OASD did not know if Dr. Pfaff was still practicing medicine, (4) OASD's staff told patients that they could see an OASD physician for treatment, and (5) OASD's staff failed to communicate to the patients the contact information for Dr. Pfaff and the Lewes Spine Center.

---

[25]  Even though it is referred to as "Section 10," it is actually paragraph 11.

[26]  Black's Law Dictionary 538 (9th ed. 2009).

Dr. Pfaff takes OASD's statements and non-disclosures and alleges OASD "breached paragraph 11 of the Separation Agreement by lying and/or feigning ignorance..." I have concluded that OASD did not disparage Dr. Pfaff. There is nothing disparaging about saying that (1) an employee is on a leave of absence, (2) you do not know that employee's whereabouts, and (3) you do not know if that employee is still practicing his trade or profession. These are all innocuous statements. Employees do take a leave of absence. Employees do move around. Employees do stop practicing their trade or profession. Indeed, OASD did not say that Dr. Pfaff was not practicing medicine. OASD just said that it did not know if he was. That is certainly different than stating that Dr. Pfaff was not practicing medicine. I will note that, if true, OASD falsely claiming that it did not know of Dr. Pfaff's current circumstances or declining to communicate his contact information to patients does not disparage Dr. Pfaff. OASD was simply not under a duty to disclose Dr. Pfaff's information, especially, when according to Dr. Pfaff, he did not intend to provide this information to OASD. Dr. Pfaff's allegation that OASD breached paragraph 11 of the Separation Agreement lacks substance, and there is simply no set of facts that would allow Dr. Pfaff a path to recovery. OASD's Motion to Dismiss Count II of Dr. Pfaff's counterclaim for the failure to state a claim for which relief may be granted is **GRANTED**.

13

## III. Defamation and Defamation *Per Se*

Dr. Pfaff and the Lewes Spine Center allege that OASD defamed them by (1) lying and feigning ignorance to Dr. Pfaff's patients thereby intentionally diverting those patients from Dr. Pfaff and the Lewes Spine Center towards OASD, (2) making statements to Dr. Pfaff's patients that lowered Dr. Pfaff and the Lewes Spine Center's reputation in the community and deterred Dr. Pfaff's patients from patronizing Dr. Pfaff and the Lewes Spine Center, and (3) maligning Dr. Pfaff and the Lewes Spine Center's reputation by suggesting that Dr. Pfaff – an esteemed surgeon in the community who owns and operates the Lewes Spine Center – no longer practices in the community. OASD argues that the counterclaim fails to allege any facts supporting the elements of defamation or a defamation *per se* claim.[27]

The tort of defamation is composed of two torts: libel, which is written defamation, and slander, which is oral defamation.[28] Generally, the elements of defamation are: (1) a defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the

---

[27] It is significant to note that Counts III and IV of the counterclaim fails substantively because it fails to (1) state the law on defamation and defamation *per se*, which would provide the elements of the stated torts and (2) how OASD violated each element of defamation and defamation *per se.*

[28] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

14

communication's defamatory character; and (5) injury.[29] A defamatory communication is one that tends to injure a person's reputation.[30] Although oral defamation claims generally require proof of special damages, Delaware courts recognize four categories of slander that require no such proof and are considered slander *per se.*[31] These categories are maligning a person in his or her trade or business, imputing a crime of moral turpitude, implying a person suffers from a loathsome disease and imputing unchastity to a woman.[32] In this case, Dr. Pfaff and the Lewes Spine Center claim that OASD maligned them in their trade or business. Once a plaintiff establishes a prima facie case, the defendant may plead the truth of the alleged defamatory statements as a defense.[33] "Under Delaware law there is no liability for defamation when a statement is determined to be true."[34] No defamation has occurred where a statement is no more damaging to plaintiff's reputation in the mind of the average person than a truthful statement would have been.[35]

---

[29] *Delaware Express Shuttle, Inc., v. Older*, 2002 WL 31458243, at *3 (Del. Ch. 2000).

[30] Black's Law Dictionary 480 (9th ed. 2009).

[31] *Spence*, at 970.

[32] *Delaware Express Shuttle, Inc.*, 2002 WL 31458243 at 21.

[33] *Id.*

[34] *Holmes v. The News Journal Co.*, 2015 WL 1893150, at *3 (Del. Super. Apr. 20, 2015)(citing *Riley v. Moyed*, 529 A.2d 248, 253(Del. 1987)).

[35] *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del. 1998).

15

OASD did not say anything at all about the Lewes Spine Center. Thus, OASD did not defame the Lewes Spine Center. OASD did not say anything in writing about Dr. Pfaff. Thus, OASD did not libel Dr. Pfaff. This leaves only Dr. Pfaff's slander claim. Dr. Pfaff alleges that (1) OASD's staff told patients that Dr. Pfaff was on a leave of absence, (2) OASD's staff told patients that OASD was unaware of Dr. Pfaff's whereabouts, (3) OASD's staff told patients that OASD did not know if Dr. Pfaff was still practicing medicine, (4) OASD's staff told patients that they could see an OASD physician for treatment, and (5) OASD's staff failed to communicate to the patients the contact information for Dr. Pfaff and the Lewes Spine Center. Dr. Pfaff uses these five factual allegations to support his three theories of defamation. Regardless of how Dr. Pfaff's theories are phrased, they are based on two categories of actions by OASD. One, OASD's non-disclosure of Dr. Pfaff's contact information. Two, OASD's statements about Dr. Pfaff's circumstances.

A. Dr. Pfaff's Contact Information

I have concluded that OASD's non-disclosure of Dr. Pfaff's contact information did not defame Dr. Pfaff. First, in this regard, OASD did not say anything to anyone about Dr. Pfaff. Two, OASD did not say anything defamatory to anyone about Dr. Pfaff. In summary, OASD refrained from giving Dr. Pfaff's contact information to patients who contacted OASD. Thus, the first two elements

16

of a defamation claim are absent.  What Dr. Pfaff seeks to do is expand the law of defamation to include liability to any person who fails to disclose information about another person to a third party.  This particular application of the law would be ill advised.  Additionally, the information that Dr. Pfaff is alleging that OASD failed to disclose to a third party patient is information that he never intended OASD to have and there is no allegation that he even authorized OASD to disclose it.

### B.  OASD's Statements About Dr. Pfaff

There is nothing defamatory about OASD's statements about Dr. Pfaff.  OASD said that Dr. Pfaff was on a leave of absence.  That is an innocuous statement.  It is not at all unusual for an employee to take a leave of absence.  OASD said that it was not aware of Dr. Pfaff's whereabouts. That is also an innocuous statement.  It is not at all unusual for an employer to be unaware of an employee's whereabouts. Employees come and go all the time.  OASD's stated lack of knowledge about Dr. Pfaff's whereabouts – even though OASD was aware – is not unusual and is not even a communication about Dr. Pfaff.  Employers often do not know where departed employees have gone.  And lastly, OASD said that it did not know if Dr. Pfaff was still practicing medicine.  As I noted before, OASD did not say that Dr. Pfaff was not practicing medicine.  OASD just said it did not know if he was or not.  There is, as I noted before, a meaningful difference between OASD saying it did not know if Dr.

17

Pfaff was still practicing medicine and saying that Dr. Pfaff was not practicing medicine. The former goes to OASD's lack of knowledge about Dr. Pfaff's circumstances while the latter is an affirmative statement about Dr. Pfaff's circumstances. I find no basis to support a defamation claim based on what OASD actually said. OASD did what many employers do when an employee leaves – say virtually nothing. Without more, there is no basis for Dr. Pfaff's defamation claim.

Dr. Pfaff and the Lewes Spine Center's defamation and defamation *per se* allegations fail as a matter of law because (1) they fail to allege facts supporting the elements of a defamation and/or defamation *per se* claim, and (2) the statements made by OASD as alleged by Dr. Pfaff, even if untrue, are not damaging to Dr. Pfaff. Dr. Pfaff and the Lewes Spine Center's allegation that OASD committed defamation and defamation *per se* are wholly conclusory, and there is simply no set of facts that would allow Dr. Pfaff or the Lewes Spine Center a path to recovery. OASD's Motion to Dismiss Counts III and IV of the counterclaim filed by Dr. Pfaff and the Lewes Spine Center for the failure to state a claim for which relief may be granted is **GRANTED**.

## CONCLUSION

Orthopaedic Associates of Southern Delaware, P.A.'s Motion to Dismiss the counterclaim filed by Dr. Pfaff and the Lewes Spine Center for the failure to state a

claim for which relief can be granted is **GRANTED**.

  **IT IS SO ORDERED.**

        Very truly yours,

        */s/ E. Scott Bradley*

        E. Scott Bradley

ESB/sal
oc:  Prothonotary