**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| AUREUS HOLDINGS, LLC d/b/a LO70s, | ) ) ) | |
| Plaintiff and Counterclaim Defendant, | ) ) ) | C.A. No. N20C-07-061 EMD CCLD |
| v. | ) ) ) | |
| KUBIENT, INC., | ) ) | |
| Defendant and Counterclaim Plaintiff, | ) ) | |

Submitted: May 24, 2021[1]
Decided: August 6, 2021

*Upon Consideration of Defendant's Partial Motion to Dismiss
the Amended Complaint Pursuant to Rule 12(b)(6)*
***DENIED***

Larry R. Wood, Jr, Esquire, Brandon W. McCune, Esquire, Blank Rome LLP, Wilmington, Delaware. *Attorneys for Aureus Holdings, LLC d/b/a Lo70s*.

Rudolf Koch, Esquire, Travis S. Hunter, Esquire, Nicole K. Pedi, Esquire, Valerie A. Caras, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware. *Attorneys for Kubient, Inc.*

**DAVIS, J.**

## I.      INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the

Court and involves claims regarding the failure to enter into an asset purchase agreement (the

"APA").  Plaintiff Aureus Holdings d/b/a Lo70s ("Lo70s") alleges that Defendant Kubient Inc.

("Kubient") breached a Binding Letter of Intent ("LOI") by failing to move towards executing

---

[1] D.I. No. 36

the APA and failing to negotiate in good faith. Lo70s also alleges that Kubient unjustly enriched themselves and tortiously interfered with Lo70s business relations.

Lo70s filed its initial complaint on July 7, 2020.[2] Kubient filed its answer, affirmative defenses and counterclaims on August 31, 2020.[3] Lo70s filed the Amended Complaint on November 6, 2020 seeking recovery for (i) breach of the LOI, (ii) breach of the duty to negotiate in good faith, (iii) unjust enrichment and (iv) tortious interference with business relations.[4] On December 9, 2020, Kubient filed a partial motion to dismiss (the "Motion") Lo70s' unjust enrichment and tortious interference with business relations claims.[5] The Court held a hearing on April 28, 2021. After the hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Court **DENIES** the Motion.

## I. BACKGROUND[6]

### A. PARTIES

Lo70s is a Nevada LLC headquartered in Nevada.[7] Lo70s specializes in advertising data and lead generation.[8] Lo70s offers first look access to video ad placements.[9] Lo70s participates in advertising arbitrage, or the business of buying and selling advertisement space and opportunities.[10] Lo70s depended on no single customer, platform or source of revenue in a given

---

[2] D.I. No. 1.
[3] D.I. No. 5.
[4] D.I. No. 16.
[5] D.I. No. 22.
[6] Unless otherwise indicated, the following facts are as alleged in the Amended Complaint. For purposes of the Motion, the Court must view all well-pled facts alleged in the Amended Complaint as true and in a light most favorable to Lo70s. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[7] Amend. Compl. ¶ 4.
[8] *Id.*
[9] *Id.* ¶ 13.
[10] *Id.* ¶ 15.

year.[11] Lo70s pled that it has a strong reputation and a strong network of connections that allowed Lo70s to keep up with the market.[12]

Kubient is a Delaware corporation headquartered in New York.[13] Kubient is also involved in the advertising technology industry.[14]

## B. THE PARTIES ENTER THE LOI.

Kubient became interested in acquiring Lo70s' sales infrastructure—and goodwill—to improve Kubient's position for an initial public offering (the "IPO").[15] On March 1, 2019, Kubient and Lo70s entered into the LOI.[16] Kubient and Lo70s also agreed to create the APA under which Kubient would acquire substantially all of Lo70s' assets.[17]

In the LOI, the parties agreed to prepare the APA:

Proposed Agreement. As soon as reasonably practicable after the execution of this [LOI], the Parties shall commence to draft the [APA] (and related ancillary documents thereto) relating to [Kubient's] acquisition of all of the Assets, to be drafted by [Kubient's] counsel.[18]

The LOI's term, referred to as the "Exclusivity Period," ran from March 1, 2019 to December 31, 2019.[19] The parties expressly agreed that the LOI "shall constitute a legally binding and enforceable agreement between [Kubient] and [Lo70s]."[20]

---

[11] *Id.* ¶ 18.
[12] *Id.*
[13] *Id.* ¶ 5.
[14] *Id.*
[15] *Id.* ¶ 23.
[16] *Id.* ¶ 26.
[17] *Id.* ¶ 26.
[18] *Id.* Ex. A (the "LOI") § 1(b).
[19] Amend. Compl. ¶ 27.
[20] *Id.* ¶ 28; *see also* LOI at 1.

## C. KUBIENT DIRECTS LO70S TO SHIFT BUSINESS TO KUBIENT AND TO ACT FOR KUBIENT'S BENEFIT.

After executing the LOI, Lo70s helped Kubient integrate Lo70s' assets into Kubient.[21] Lo70s assisted Kubient with the integration at Kubient's request.[22] Lo70s also aided Kubient with developing its market participation and client base.[23] Lo70s purportedly identified opportunities for market penetration, explained Kubient's new role and services to Lo70s' customers, and integrate human resources-related data.[24] For example, Kubient specifically requested that Lo70s focus on accounts related to Fidelity Media, which was newly acquired by Kubient.[25] Lo70s abandoned its own customers and arbitrage business in order to comply with Kubient's request.[26] Kubient kept all revenue generated by Lo70s' efforts related to Fidelity Media.[27]

Kubient also requested that Lo70s shift its entire sales effort to Kubient's new, not-yet launched "Digital Out of Home" or "DOOH" product in September 2019.[28] Lo70s' business development team also worked solely on pursuing and generating leads for DOOH and then turned those over to Kubient, preventing Lo70s from working on any Lo70s-centered opportunities.[29] Kubient directed Lo70s employees to develop Kubient relationships.[30] For example, Kubient directed Lo70s employee Maxwell Bollinger to develop business with Beasley Media for Kubient's sole benefit.[31]

---

[21] Amend. Compl. ¶ 33.
[22] *Id.*
[23] *Id.* ¶ 34.
[24] *Id.*
[25] *Id.* ¶ 35.
[26] *Id.*
[27] *Id.*
[28] *Id.* ¶ 36.
[29] *Id.*
[30] *Id.* ¶ 37.
[31] *Id.*

4

Throughout the Exclusivity Period, Lo70s worked toward adapting to Kubient's projected combined business strategy, to the detriment of its own revenue-generation and corporate financial well-being.[32] By November 2019, Lo70s completely abandoned its arbitrage business, turned over its customers to Kubient and began exclusively using Kubient's systems and platforms.[33] In sum, Kubient compelled Lo70s to only pursue business opportunities for Kubient's benefit, to shift its entire sales infrastructure to Kubient's desired systems and remade its business model to focus on either Fidelity Media or DOOH–depending on Kubient's preference at the time.[34]

**D. THE PARTIES INTEGRATE THEIR BUSINESSES.**

Kubient and Lo70s otherwise integrated their businesses after signing the LOI. As set out in the Amended Complaint, Kubient:

a. Asked Lo70s' employees to include client calls and updates in Kubient's customer google sheets

b. Directed Kubient representatives to train Lo70s' employees on what Kubient offers to direct Lo70s' messaging about Kubient to potential clients

c. Emphasized the importance of Kubient and Lo70s working together on joint positioning in the market

d. Demanded that Lo70s turn over all new accounts to Kubient

e. Requested and obtained Lo70s' HR-related information

f. Urged the joint discussion of pipeline opportunities, or future possible sales, including requests by Kubient for a deeper level of clarity on Lo70s' pipelined opportunities

g. Created a combined organization chart; and

---

[32] *Id.* ¶ 38.
[33] *Id.*
[34] *Id.* ¶ 39.

5

h.  Informed Lo70s that, among other things, all Lo70s employees had full time jobs with Kubient upon completion of the asset acquisition.[35]

Kubient began instructing Lo70s employees to track interactions with customers as if the transactions were done by Kubient.[36]  Kubient directed Lo70s' employees and executives to track and inform Kubient about Lo70s' future contracts and opportunities.[37]  Simultaneously, Kubient would also charge Lo70s' employees to avoid certain opportunities.[38]

In addition, Kubient limited Lo70s from contacting Lo70s' customers and opportunities and directed communications with those customers to Kubient.[39]  These customers included but were not limited to ThinkHyve, Zeta Global, Adtetra, Place Exchange, Adomi and Do Media.[40]

When Kubient completed its takeover of Lo70s' customers, opportunities and accounts, Kubient ended contracts or "sunk" negotiations with certain customers to Lo70s' detriment, including but not limited to, contracts with Platform 161, Mobile Fuse, DataXu, and Taggify.[41]

Essentially, Kubient purportedly moved Lo70s' entire infrastructure, including prior customer information, leads, platforms and data to its own systems.[42]

**E.  KUBIENT DOES NOT DRAFT OR EXECUTE THE APA.**

Kubient represented to Lo70s that it was actively working to consummate the transaction.[43]  For example, Kubient emailed staff from both companies outlining guidance on dispute resolution and collaboration requests between the two companies.[44]

---

[35] *Id.* ¶ 40.
[36] *Id.* ¶ 53.
[37] *Id.*
[38] *Id.* ¶ 54.
[39] *Id.* ¶ 55.
[40] *Id.*
[41] *Id.* ¶ 56.
[42] *Id.* ¶ 59.
[43] *Id.* ¶ 45.
[44] *Id.*

On November 6, 2019, the parties agreed that Kubient would pay Lo70s $500,000 in cash upon executing the APA and then Kubient would then provide an undetermined amount of stock following Kubient's eventual IPO.[45] Later that day, Kubient represented that Kubient's Board approved the agreement's terms and Kubient's acquisition of Lo70s.[46]

On November 7, 2019, Kubient reneged on the deal.[47] Kubient represented that it would instead pay Lo70s $200,000 in cash and no stock at its eventual IPO.[48] Lo70s rejected that offer because of the previous day's communications.[49]

Kubient never drafted or finalized the APA and ancillary documents.[50] Kubient did not present an execution copy of the APA and the ancillary documents before the Exclusivity Period expired on December 31, 2019.[51]

## II. PARTIES' CONTENTIONS

### A. KUBIENT'S CONTENTIONS.

Kubient argues that Lo70s' unjust enrichment and tortious interference claim should be dismissed because the LOI controls Lo70s' remedies. Kubient claims that Lo70s' unjust enrichment claim is based on Kubient's alleged failure to perform under the LOI and, therefore, Lo70s' measure of damages is controlled by the contract. Kubient also contends that Lo70s fails to state a claim for tortious interference because Lo70s fails to allege: (i) a reasonable probability of a business opportunity, (ii) causation, and (iii) intentional interference. Kubient finally argues that the economic loss doctrine precludes Lo70s' tortious interference claim.

---

[45] *Id.* ¶ 46.
[46] *Id.*
[47] *Id.* ¶ 47.
[48] *Id.*
[49] *Id.*
[50] *Id.* ¶ 49.
[51] *Id.* ¶ 50.

## B. Lo70s' Contentions

Lo70s contends that the unjust enrichment claim should survive because Lo70s alleges that Kubient unjustly enriched itself with extracontractual activity—*i.e.*, by syphoning away Lo70s' labor and resources. While Lo70s argues that its unjust enrichment claim is sufficiently independent, Lo70s' also states that the unjust enrichment claim is permissible as a claim pled in the alternative from the contract claims.

## III. STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[52] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[53]

In considering a motion to dismiss under Rule 12(b)(6), the court generally may not consider matters outside the complaint.[54] However, documents that are integral to or incorporated by reference in the complaint may be considered.[55] "If . . . matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[56]

---

[52] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[53] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[54] Super. Ct. Civ. R. 12(b).
[55] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).
[56] Super. Ct. Civ. R. 12(b).

## IV.    DISCUSSION

### A. LO70S PLED ALL THE ELEMENTS OF AN UNJUST ENRICHMENT CLAIM.

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[57]  In Delaware, the elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.[58]  Unjust enrichment is a legal, not equitable, "off-the-contract theory of recovery" that affords relief when there is no formal agreement.[59]  An unjust enrichment claim will not survive when it is "merely a measure of the damages for" a breach of contract claim.[60]  "If a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied."[61]  Applying this standard, the Court finds that Lo70s has pled all the elements of an unjust enrichment claim.

First, Lo70s alleges that it enriched Kubient because Lo70s helped Kubient integrate Lo70s' assets into Kubient and generally worked for Kubient's benefit, including turning over every single customer to Kubient.[62]  Second, Kubient impoverished Lo70s because Lo70s "completely abandoned its arbitrage business" on Kubient's instructions.[63]  Third, Lo70s' impoverishment relates to the enrichment because Lo70s abandoned business and turned it over to Kubient.  Fourth, Kubient does not argue that its conduct was justified.  Five, there is no

---

[57] *In re Verizon Ins. Coverage Appeals*, 222 A.2d 566, 577 (Del. 2019) (Internal citations omitted).
[58] *Windsor I, LLC v. CWCapital Asset M'gmt LLC*, 238 A.3d 863, 875 (Del. 2020) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).
[59] *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 496-97 (Del. 2003).
[60] *Dalton v. Ford Motor Co.*, 2002 WL 338081, at *6 (Del. Super. Feb. 28, 2002).
[61] *BAE Sys's. Info. and Elec. Sys's. Integration Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009).
[62] *See, e.g., id.* ¶¶ 33-35, 38.
[63] *Id.* ¶ 38.

9

remedy because the "Binding LOI does not provide Lo70s a mechanism for recovering its damages resulting from Kubient's misconduct."[64]

## B. THE LOI DOES NOT BAR LO70S' UNJUST ENRICHMENT CLAIM AS THE LOI DOES NOT COMPREHENSIVELY GOVERN THE PARTIES' RELATIONSHIP.

Kubient argues that the LOI governs the parties' relationship and therefore, Lo70s can only recover under breach of contract.[65] Kubient relies upon *BAE Systems Information and Electric Systems Integration, Inc. v. Lockeed Martin Corp.*[66] Unlike the *BAE Systems* agreements, however, the LOI does not comprehensively govern the relationship between Lo70s and Kubient.

The Court of Chancery dismissed the unjust enrichment claim in *BAE Systems* because it alleged damages arising from the defendant's failure to honor express contract provisions that apportioned work between two entities.[67] By contrast, the LOI did not apportion work between Lo70s and Kubient or allocate cost. Instead, Lo70s contends that it acted to Kubient's benefit—without compensation—to make the expected "combination/integration go smoothly."[68] Therefore, the LOI does not preclude an unjust enrichment claim because the LOI does not govern this aspect of the parties' relationship.

## C. THE COURT FINDS THAT LO70S HAS PROPERLY *PLED* A TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS CLAIM.

"[A] claim for tortious interference with business relations must allege: (1) the reasonable probability of a business opportunity; (2) the intentional interference by the defendant with that business opportunity; (3) proximate causation; and (4) damages" to survive a motion to

---

[64] *Id.* ¶ 84.
[65] Def.'s Reply Br. in Supp. of its Partial Mot. to Dismiss Lo70s' Amend. Compl. Pursuant to Rule 12(b)(6) (hereinafter "Reply Br.") 4 (citing to *BAE Sys's Info. and Elec. Sys's. Integration Inc.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009)).
[66] *Id.*
[67] *BAE Sys's Info. and Elec. Sys's. Integration Inc.*, 2009 WL 264088, at *8 (Del. Ch. Feb. 3, 2009)
[68] Amend. Compl. ¶ 83.

dismiss.[69] "All of these factors must be considered in light of a defendant's privilege to compete or protect his business interest in a fair and lawful manner."[70]

"A plaintiff 'must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm.'"[71] The plaintiff does not need to name the specific party but must be descriptive enough "to support a claim that specific prospective business relations existed."[72] Furthermore, the plaintiff must plead that the business relationship is reasonably probable.[73] "To be reasonably probable, a business opportunity must be something more than a mere hope or the innate optimism of the salesman or a mere perception of a prospective business relationship."[74] Generally, "the existence of such a business expectancy is a question of fact not suitable for resolution [on a motion to dismiss]."[75] The Court may find a reasonable probability of receiving repeat businesses based on "stellar reputation in the industry and longstanding relationships" with customers.[76]

Lo70s alleges that "Lo70s was highly profitable and known for its efficiency in the [arbitrage] market."[77] According to Lo70s, Kubient prevented Lo70s from communicating with customers like "ThinkHyve, Zeta Global, Adtedra, Place Exchange, Adomi, and Do Media."[78] Kubient also "ended contracts or sunk negotiations with certain customers . . . including, but not

[69] *O'Gara v. Coleman*, 2020 WL 752070, at *8 (Del. Ch. Feb. 14, 2020) (Internal citations omitted).
[70] *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009).
[71] *Orthopedic Assocs. Of S. Del., P.A.*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018) (citing *U.S. Bank Nat'l Assoc. v. Gunn*, 23 F.Supp.3d 426, 436 (D. Del. 2014)).
[72] *Agilent Techs., Inc.*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009).
[73] *See Chapter 7 Trustee Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *12 (Del. Ch. Sep. 22, 2016) ("[T]he plaintiff must ultimately prove the reasonable probability of a business opportunity").
[74] *Agilent Techs., Inc.*, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009) (Internal citations omitted).
[75] *Chapter 7 Trustee Constantino Flores*, 2016 WL 5243950, at *12 (Del. Ch. Sep. 22, 2016) (citing *Gill v. Del. Park, LLC*, 294 F. Supp. 2d 638, 646 (D. Del. 2003).
[76] *Beard Research, Inc. v. Kates*, 8A.3d 573, 611 (Del. Ch. 2010).
[77] Amend. Compl. ¶ 15.
[78] *Id.* ¶ 55.

limited to, contracts with Platform 161, Mobile Fuse, DataXu, and Taggify."[79] As this stage of the case, the Court can infer from Lo70s' reputation and ongoing customer relationships that there was a reasonable probability of repeat business. As such, the Court finds that Lo70s adequately pled that there was a reasonable probability of a business opportunity.

"To meet the intentional interference prong, a plaintiff must prove that the defendant's interference with the plaintiff's business opportunity was intentional and wrongful or improper."[80] "An alleged interference in a prospective business relationship is only actionable if it is wrongful."[81] Wrongful conduct can be tortious: for example, communicating actionable defamatory statements to impair a prospective business relationship.[82] Other rule-violating conduct may be improper.[83] An agent acting within its authority cannot tortiously interfere with a prospective business relationship.[84] "It is axiomatic, however, that the tort of interference with an advantageous business relationship can only lie against a third-party to the business relationship."[85]

Kubient argues that it acted within its contractual rights under the LOI and, therefore, any alleged conduct is not wrongful. The Court notes that Lo70s alleges that the LOI did not grant Kubient the right to direct Lo70s to give up its business. Lo70s is contending that Kubient was not acting within its contractual rights. Lo70s pleads that "on Kubient's instructions, Lo70s… completely abandoned its arbitrage business, turned over every single one of its customers to

---

[79] *Id.* ¶ 56,
[80] *Orthopaedic Assocs. Of S. Del., P.A.*, 2018 WL 822020, at *2 (Del. Super. Feb. 9, 2018)
[81] *Id.* at *3.
[82] *See Agilent Techs., Inc.*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009) (finding wrongful conduct sufficiently pled on a motion to dismiss counterclaims when the Counterclaim Defendant made statements that could be reasonably inferred as actionable statements of fact).
[83] *See Gill v. Delaware Park, LLC*, 294 F. Supp.2d 638, 641-42, 645-46 (D. Del. 2003) (finding that defendants' conduct would be improper conduct actionable under Delaware law when plaintiff alleged that defendants agreed to prevent him from using a legal horse racing strategy and such an agreement violated the Delaware Rules of Racing).
[84] *See OptimisCorp v. Waite*, 2015 WL 5147038, at *78 (Del. Ch. Aug. 26, 2015).
[85] *Gill*, 294 F. Supp.2d at 646 (D. Del. 2003).

Kubient…. Kubient had de facto completed the acquisition of Lo70s' assets."[86]  Lo70s alleges,

further, that Kubient acted in bad faith with respect to the LOI – for example, agreeing to pay

Lo70s $500,000 under a finalized version of the APA and then immediately reneging and

offering to pay only $200,000.[87]  The Court may infer from these allegations that Kubient acted

intentionally and wrongfully to interfere with Lo70s business relationships.

Lo70s must make factual allegations that support a reasonable inference that Lo70s was

denied the business opportunities because of Kubient's conduct.[88]  Lo70s alleges that Kubient

directed Lo70s to develop relationships for Kubient at the expense of Lo70s' existing

relationships so that Kubient could take Lo70s' opportunities for itself.[89]  Lo70s alleges, thus,

that it was unable to generate its own revenue when Kubient did not follow through with the LOI

because it had given up any independent revenue streams.[90]  Lo70s therefore alleges facts

supporting a reasonable inference that Kubient's conduct proximately caused it damages.

### D. THE ECONOMIC LOSS DOCTRINE DOES NOT BAR LO70S' TORTIOUS INTERFERENCE CLAIM BECAUSE THE LOI DOES NOT IMPOSE ANY DUTIES RELATED TO LO70S' PROSPECTIVE BUSINESS RELATIONSHIPS BEFORE THE PARTIES FINALIZE THE APA.

"The economic loss doctrine 'prohibits recovery in tort for losses unaccompanied by a

bodily harm or a property damage.'"[91]  While initially a products liability doctrine, courts have

expanded the doctrine to "any kind of dispute arising from a commercial transaction where the

alleged damages do no harm… other than the bargained for item."[92]  The economic loss doctrine

---

[86] Amend. Compl. ¶ 38.
[87] *Id.* ¶ 46-47.
[88] *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 887 (Del. Ch. 2009); *see also Malpiede v. Townson*, 780 A.2d 1075, 1100 (Del. 2001) (upholding the trial courts dismissal of a tortious interference claim because the defendant corrected a misrepresentation before the plaintiff accepted the defendant's offer).
[89] Compl. ¶¶ 35-37, 53-55.
[90] *See, e.g.,* Amend Compl. *See also id.* ¶ 60.
[91] *Christiana Marine Serv. Corp. v. Texaco Fuel and Marine Marketing*, 2002 WL 1335360, at *5 (Del. Super. Jun. 13, 2002)
[92] *Id.*

does not automatically bar tortious interference claims.[93] "If the claimed duty is independent from the duties imposed by the contract, the tortious interference claim should survive."[94]

The economic loss doctrine does not bar Lo70s' tortious interference claim because the LOI only imposed duties related to the parties entering an APA.[95] The LOI is silent towards dividing the parties' pre-APA finalization business. Thus, the LOI imposed no duties related to Lo70s' prospective business relationships before the parties finalized the APA. Lo70s alleges that Kubient tortiously interfered with Lo70s' prospective business relationships by dividing the parties' business before finalizing the APA.[96] Therefore, Kubient's alleged tortious conduct did not violate any duty imposed by the LOI and the economic loss doctrine does not bar Lo70s' tortious interference claim.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion. The Motion tests the sufficiency of the Amended Complaint, under Civil Rule 12(b)(6), as to the unjust enrichment and tortious interference with business relations claims. Using the applicable legal standard, the Court find that Lo70s has sufficiently pled those two claims. The Court is not determining the overall strength of the claims, whether the claims survive only as claims pled in the alternative and/or, after discovery, whether the claims will survive a dispositive motion.

Dated: August 6, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[93] *See Commonwealth Const. Co. v. Endecon, Inc.*, 2009 WL 609426, at *5 (Del. Super. Mar. 9, 2009) (declining to extend the economic loss doctrine to the plaintiff's tortious interference with contract claim because parties would not be able to protect economic interests through contract when the parties did not contract with each other).
[94] *R. Keating & Sons, Inc. v. Chiselcreek Dev., LLC*, 2020 WL 6390676, at *6 (Del. Super. Oct. 30, 2020).
[95] *See generally* LOI.
[96] *See id.* ¶¶ 88-95.

14